OPINION
Appellants Nationwide Insurance Companies ("Nationwide") appeals the decision of the Richland County Court of Common Pleas that granted Appellee Hamilton Insurance Services, Inc.'s ("Hamilton") motion for relief from judgment pursuant to Civ.R. 60(B)(4). The following facts give rise to this appeal. From 1975 to 1984, Neil Hamilton worked as a Western and Southern Insurance agent. During that period, he learned of a vacancy in a Nationwide Agency due to the death of its owner. Nationwide manager Tom Dove offered Hamilton the opportunity to take over one-half of the agency, and Hamilton agreed. For the first three years, Hamilton worked as an employee of Nationwide as part of a validation period. In October 1984, Hamilton executed an Agent Employment Agreement, which provided that it was terminable, at-will, by either Nationwide or the agent. Prior to executing this agreement, Tom Dove explained the Nationwide validation period to Hamilton. As Hamilton understood Dove's explanation, after he completed the three-year validation period, he would become an independent contractor, which he interpreted as meaning he "would own [his] own business" and "would run the business [his] way." Hamilton believed his future with Nationwide would be secure after the validation period because he would have achieved career agent status. After completing the training and validation process, Hamilton became an independent contractor. As an independent contractor, Hamilton executed another contract, the Nationwide Agency Agreement, which he did in May 1987. As with the previous contract, this contract also provided that it was terminable, at-will, by either party. No oral representations were made to Hamilton prior to his execution of the Agency Agreement. In 1992, Hamilton decided to incorporate the agency. As part of the incorporation process, Hamilton received a Corporate Agency Agreement from Nationwide. The Corporate Agency Agreement contained an at-will termination provision. The contract also contained a noncompetition clause as well as an integration clause. In April 1991, Nationwide implemented the Auto Profiling Management Plan ("APMP"). This plan evaluates an agent's performance based upon the loss-premium ratio of the policy holders in the agency. If the ratio for the most recent three-year period is ninety percent or more, an agent is classified as "historically unprofitable" and, absent plan-level improvement of the three-year ration, within the next two years to less than ninety percent, the agent is terminated. The APMP essentially "blames" an agent for writing a policy which produces a claim. Although the agent is terminated, Nationwide may continue to underwrite the policies upon which the ration was calculated. Nationwide advised its agents of the adoption of the APMP in a correspondence dated March 18, 1991. However, Hamilton did not receive a copy of the APMP until the end of March 1992, when Nationwide informed him that he was subject to termination under the plan at the end of two years. On April 1, 1994, Nationwide terminated the agency agreement. Hamilton filed an action, in the Richland County Court of Common Pleas, alleging that the April 1, 1994 termination of the Nationwide Corporate Agency Agreement was wrongful and in bad faith. Hamilton also alleged that the termination clause of the Corporate Agency Agreement was unconscionable. The trial court found that the termination clause in the contract was a question for the jury. Therefore, the trial court permitted Hamilton to present evidence, to a jury, that representations were made to him that the agreement was terminable only for just cause. Following deliberations, the jury awarded Hamilton $100,000. The trial court determined that the forfeiture of benefits pursuant to the non-competition clause was unconscionable, and awarded Hamilton accumulated benefits pursuant to the agreement. As such, the trial court entered judgment, in favor of Hamilton, in the amount of $208,164. Nationwide filed a motion for judgment notwithstanding the verdict which the trial court overruled. The trial court also overruled Hamilton's motion for additur. The trial court awarded sanctions to Hamilton, in the amount of $10,850, finding that Nationwide failed, without adequate explanation, to produce a witness for deposition. Thereafter, Nationwide filed a notice of appeal and Hamilton filed a notice of cross-appeal to this court. In an opinion filed on January 14, 1998, we affirmed the trial court's judgment against Nationwide and overruled Hamilton's cross-appeal. Nationwide filed a notice of appeal to the Ohio Supreme Court. The Ohio Supreme Court reversed our decision and held "* * * that the Corporate Agency Agreement was terminable by either party with or without cause. Therefore, Nationwide did not breach the terms of the agreement when it terminated the contract in April 1994." Hamilton Ins. Serv., Inc. v. Nationwide Ins. Co. (1999), 86 Ohio St.3d 270,274. The Court also held that the noncompetition clause was valid and enforceable. Id. at 275. On November 2, 1999, Hamilton filed a motion for relief from judgment, pursuant to Civ.R. 60(B), in the Richland County Court of Common Pleas. In his motion, Hamilton asked the trial court to vacate the judgment of the Ohio Supreme Court so he could proceed to litigate his claim that the Corporate Agency Agreement should be reformed to reflect the parties' intent that termination of the agreement was only permissible "for cause." The trial court conducted a hearing on Hamilton's motion on February 29, 2000. On March 7, 2000, Hamilton submitted a judgment entry which granted the requested relief. The trial court signed the judgment entry and filed it on March 13, 2000. Nationwide filed a notice of appeal and sets forth the following assignment of error for our consideration:
 I. THE TRIAL COURT ERRED WHEN IT FAILED TO FOLLOW THE OHIO SUPREME COURT'S MANDATE IN THIS MATTER AND GRANTED PLAINTIFF'S CIV.R. 60(B) MOTION FOR RELIEF FROM JUDGMENT.
 I
Nationwide contends the trial court erred when it granted Hamilton's motion for relief from judgment pursuant to Civ.R. 60(B). We agree. In its judgment entry granting relief from the Ohio Supreme Court's judgment, the trial court set forth the following reasons in support of its conclusion that Hamilton was entitled to relief from judgment under Civ.R. 60(B)(4). First, the trial court noted that Hamilton properly plead the reformation claim as an alternative claim under Civ.R. 8(E)(2). Second, the trial court determined that the reformation claim was for the trial court to determine. Third, the trial court found that the reformation claim had not been addressed and was not subject to review by the Ohio Supreme Court. Fourth, the trial court determined that the reformation claim was no longer moot and therefore, it is no longer equitable that implied res judicata or collateral consequences attach to the reformation claim. Finally, the trial court concluded that paragraphs ten and eleven of the syllabus in Norwood v. McDonald (1943),142 Ohio St. 299, applied to the case sub judice. The cited paragraphs, in Norwood, provide as follows: 10. Where a plaintiff obtains a judgment granting him one of two alternative or mutually exclusive remedies for the assertion of the same right or the same relief, he is precluded from thereafter maintaining an action based on the other remedy; but where a judgment is for the defendant in a suit based upon one of the two mutually exclusive remedies, the plaintiff is not precluded from thereafter maintaining an action based on the other remedy.
11. A plaintiff's choice of a fancied remedy which never existed and the futile pursuit of it because of a mistake as to the facts or the law, though the first action proceeds to judgment, does not preclude such plaintiff from thereafter invoking a proper remedy, in the absence of facts which create an estoppel.
In concluding that Hamilton was entitled to relief from judgment, the trial court cited to Civ.R. 60(B)(4), which provides as follows: (B) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
* * *
(4) the judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
The trial court stated, in its judgment entry, that the final judgment "* * * should be modified to reflect that the reformation claim remains pending in that by virtue of the reversal, it is no longer equitable [60(B)(4)] that finality adverse to Hamilton attach to the reformation claim." Judgment Entry, March 13, 2000, at 2. A. Application of Civ.R. 60(B) In support of its assignment of error, Nationwide contends the trial court failed to apply the dictates of Civ.R. 60(B). Specifically, Nationwide argues the trial court did not consider the three-part test contained in GTE Automatic Elec. v. ARC Industries (1976),47 Ohio St.2d 146, when it analyzed whether Hamilton was entitled to relief from judgment. Nationwide also argues Hamilton did not present facts sufficient for the trial court to conclude that he was entitled to relief from judgment under Civ.R. 60(B)(4). Finally, appellant argues there is no evidence, in the record, that supports the conclusion that Hamilton would have a meritorious claim to present after the vacation of the Ohio Supreme Court's judgment. Prior to considering the issues raised by Nationwide, we find it necessary to address the trial court's use of Civ.R. 60(B) as a means to vacate or modify a judgment of the Ohio Supreme Court. Civ.R. 60(B) is a rule that "* * * deals with the vacation of voidable judgments." (Emphasis sic.) Staff Notes Civ.R. 60. The rule sets forth five grounds for the vacation of judgments. The rule authorizes "* * * a court to grant relief from a judgment or order * * * with respect to their own judgments." 63 Ohio Jurisprudence 3d (1985), Judgments, Section 567. "As a general rule, courts of general jurisdiction * * * have inherent power of controlling their own judgments, and of correcting, modifying, or vacating such judgments." Id. at Section 568. It appears, based on our review of the record, that the trial court used Civ.R. 60(B) to permit Hamilton to reopen its case as to the issue of reformation. Although the trial court did not specifically state, in its judgment entry, that it was vacating the judgment of the Ohio Supreme Court, it did cite to Civ.R. 60(B)(4) and conclude that Hamilton's reformation claim remained pending because the Ohio Supreme Court's decision did not address the reformation claim. This conclusion is further supported by the fact that the trial court's judgment entry, now on appeal, was in response to a motion for relief from judgment filed by Hamilton in which Hamilton requested the trial court to modify the Ohio Supreme Court's judgment to make it a non-final adjudication as to his reformation claim. See Plaintiffs' Motion for Relief from Judgment, Nov. 2, 1999, at 5. The record also indicates that Hamilton asked for this relief in a motion for reconsideration he filed in the Ohio Supreme Court. The Court overruled Hamilton's motion for reconsideration on October 20, 1999. We conclude that at that point in the proceedings, the Richland County Court of Common Pleas was required * * to carry this judgment into execution * * *", as mandated by the Ohio Supreme Court's Judgment Entry of September 1, 1999. The use of Civ.R. 60(B) to modify or partially vacate a judgment of the Ohio Supreme Court was in error, not only because the Ohio Supreme Court mandated the Richland County Court of Common Pleas carry its judgment into execution, but also because the trial court could not use Civ.R. 60(B) to modify or vacate a judgment of a superior court. Civ.R. 60(B) only permits courts to modify their own judgments. B. Election of Remedies Even if we were to conclude that the trial court properly used Civ.R. 60(B) to modify or vacate the Ohio Supreme Court's judgment, the matter is now res judicata and Hamilton cannot maintain his action for reformation. Although Hamilton, in his second amended complaint, plead both breach of contract and reformation, he elected to pursue the breach of contract claim. Having done so, he is now precluded from pursuing a claim for reformation. The doctrine of election of remedies has been substantially modified by the Ohio Rules of Civil Procedure. Fenstermaker v. Elwood (1984), 17 Ohio App.3d 250, paragraph one of the syllabus. Under Civ.R. 8(E)(2), a party may state, in his or her complaint, as many separate claims or defenses as that party has regardless of consistency and whether based on legal or equitable grounds. Thus, "* * * at least in the pleading stage, there is no requirement under the Civil Rules that a party elect between inconsistent or even contradictory theories of recovery or defense, the rights of the parties being determined by the evidence adduced at the trial rather than the particular remedy or remedies pursued." 1 Ohio Jurisprudence 3d (1985), Actions, Section 41, citing Civ.R. 11 Staff Note: 1970. However, it appears that the election of remedies doctrine is still viable as it pertains to causes of action based on a contract. Although there is an increasing reluctance in the courts to apply [the election of remedies doctrine], nevertheless litigants may still be barred due to the prior election of an inconsistent remedy. Some of these cases, however, can be explained as instances where a choice, afforded by substantive law, terminated rights upon which the remedy invoked was dependent. One fraudulently induced into a contract, for instance, may, as a matter of substantive law, either affirm or disaffirm the agreement. An election of the substantive right to affirm extinguishes the substantive right to disaffirm. Therefore, an attempt to invoke the remedy of recission after an action on the contract may fail, not because of election of inconsistent remedies, but because the plaintiff no longer has the substantive right to disaffirm. * * * In those jurisdictions where a litigant can present all the basis for a claim, whether legal or equitable, inconsistent, or alternative or hypothetical, in a single action, failure to invoke all `inconsistent remedies' in an initial suit which goes to final judgment on the merits should preclude their assertion in subsequent litigation between the parties and their privies — not because of election of remedies, but because a final judgment on the merits is res judicata as to all matters pertaining to a single cause of action which might have been litigated. Id.
It has also been explained that:
In some cases, however, a party may be estopped or precluded from obtaining reformation of an instrument by reason of the fact that he or she has brought a prior action or obtained a prior judgment, and has therefore elected to pursue another remedy. * * * Having sued upon a contract in its original form, and produced and proved it as the contract between the parties in a court of competent jurisdiction, as a result of which a final judgment has been pronounced against his or her right to recover, a party is barred from showing in another suit in a court of equity that the contract actually made between the parties was different from the written one sued upon and proved in the previous action, since the plaintiff has conclusively elected to consider the written instrument as expressing the true contract between the parties. 13 Ohio Jurisprudence 3d (1985), Cancellation and Reformation of Instruments, Section 94. In the case sub judice, although Hamilton alleged claims for both breach of contract and reformation, at the trial of this matter, Hamilton produced the contract, as written, and argued his breach of contract claim to the jury based on the language contained in the contract. Hamilton did not allege that the contract should be reformed and that Nationwide breached the contract as reformed. The jury awarded Hamilton money damages on his breach of contract claim. This matter then proceeded through the appellate process which ultimately resulted in a reversal by the Ohio Supreme Court. The Court determined that "Hamilton's assertion that the Corporate Agency Agreement is terminable only for cause is inconsistent with the clear wording of the agreement." Hamilton Ins. Serv., Inc., supra, at 273. The Court further supported this conclusion by noting that "* * * the integration clause in the agreement provides that `this Agreement may be changed, altered, or modified only in writing signed by Agency and an officer of Nationwide.'" Id. We conclude that because Hamilton produced and argued, throughout all levels of the judicial proceedings, that the contract, as written, was the contract between the parties, Hamilton is precluded from pursuing an alternative cause of action for reformation in which he now claims the contract between the parties is different from the written one he sued upon in support of his breach of contract claim. The Ohio Supreme Court has conclusively determined that the language contained in the contract is clear and unambiguous and further determined that the contract contained a valid integration clause. Thus, under the doctrine of res judicata, Hamilton is barred from attempting to recover under his cause of action for reformation. Appellant's sole assignment of error is sustained. For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby reversed. By: Wise, P.J. Milligan, V. J., concur. Edwards, J., dissents.